IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

SUSAN ABULHAWA, AVRAHAM PELED a.k.a.　)
MIKO PELED, PEGGY AHWESH, JAMES　　　　)
ANDERSON, ALICE BACH, ANTOINE　　　　　)
BOGHOSSIAN, GLORIA BOGHOSSIAN, TANIA　)
BOGHOSSIAN, JOHN BOYD, MARINA BUHLER-　)　　Case No. 1:15-cv-2186-RDM
MIKO, JAMES COBEY, JOHN DOE, ABDUR-　　)
RAHIM DUDAR, TY EBRIGHT, ABBAS　　　　　)
HAMIDEH, STEVEN GOOSSEN, RAY GORDON,　)
LINDA MANSOUR, DONNA NASSOUR, ROBIN　)
NICHOLAS, ALANNOFAL, MICHAEL RABB,　　)
MARY SCHULTZ, LYNN SCHULTZ, MICHAEL　)
SEVERAL, RICH SIEGEL, GRANT SMITH,　　　)
MICHAEL SMITH, LOU STONE, ROBIE TENORIO,)
JOHN VAN WAGONER, and LINDA VASQUEZ,　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
UNITED STATES DEPARTMENT OF TREASURY　)
and UNITED STATES DEPARTMENT OF THE　　)
TREASURY SECRETARY JACOB LEW, in his　　)
official capacity,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendants.　　　　　　　　　　)
_____ )

## MEMORANDUM OF LAW IN SUPPORT OF
## THE UNITED STATES' MOTION TO DISMISS

　　　　　　　　　　　　　　　　　CAROLINE D. CIRAOLO
　　　　　　　　　　　　　　　　　Acting Assistant Attorney General

　　　　　　　　　　　　　　　　　CHRISTOPHER J. WILLIAMSON
　　　　　　　　　　　　　　　　　OLGA L. TOLBIN
OF COUNSEL:　　　　　　　　　　Trial Attorneys, Tax Division
　　　　　　　　　　　　　　　　　U.S. Department of Justice
VINCENT H. COHEN, JR.　　　　　　Post Office Box 227
Acting United States Attorney　　　　Washington, DC 20044

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF CASE ................................................................................................... 1

1.   Tax-Exempt Organizations Generally ......................................................................... 1

2.   Plaintiffs' Complaint ............................................................................................... 3

STANDARD OF REVIEW ................................................................................................ 6

ARGUMENT ................................................................................................................. 6

I.   NO NAMED PLAINTIFF HAS STANDING TO BRING THIS SUIT ...................... 6

II.  EVEN IF PLAINTIFFS COULD BRING SUIT HERE, THE COURT DOES
     NOT HAVE AUTHORITY TO COMPEL THE RELIEF SOUGHT .......................... 12

     A.  Plaintiffs are not entitled to a writ of mandamus because this Court
         cannot order the United States to perform a discretionary act. ......................... 13

     B.  Plaintiffs cannot assert a claim under the Administrative Procedures Act
         because there has been no final agency action .................................................. 15

CONCLUSION ............................................................................................................... 18

13751563.2

## TABLE OF AUTHORITIES

**Page(s)**

### <u>Cases</u>

*Allen v. Wright*, 468 U.S. 737 (1984) ...................................................................7,11,12

*Am. Disabled for Attendant Programs Today v. HUD*, 170 F.3d 381 (3d Cir. 1999) ..........16,17

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) ...............................................................6

*Assoc. of Admin. Law Judges v. U.S. Office of Personnel Mgmt.*, 640 F. Supp. 2d 66
    (D.D.C. 2009) ...........................................................................................16

*Barron v. Reich*, 13 F.3d 1370 (9th Cir. 1994) ..............................................................14

*Bennett v. Spear*, 520 U.S. 154 (1997) .......................................................................16

*Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001) .........................................................16

*Cox v. Secretary of Labor*, 739 F. Supp. 28 (D.D.C. 1990) ...............................................14

*Domestic Sec., Inc. v. SEC*, 333 F.3d 239 (D.C. Cir. 2003) ...............................................16

*DTCC Data Repository (U.S.) LLC v. U.S. Commodity Futures Trading Comm'n*,
    25 F. Supp. 3d 9 (D.D.C. 2014) ......................................................................16

*Gant v. FBI*, 992 F. Supp. 846 (S.D.W. Va. 1998) ........................................................14

*Fulani v. Brady*, 935 F.2d 1324 (D.C. Cir. 1991) ........................................................11,12

*Heckler v. Chaney*, 470 U.S. 821 (1985) ....................................................................16

*Heckler v. Ringer*, 466 U.S. 602 (1984) .....................................................................14

*Hotel & Restaurant Emples. Union, Local 25 v. Smith*, 846 F.2d 1499 (D.C. Cir. 1988) ..........17

*\*In re Medicare Reimbursement Litig.*, 414 F.3d 7 (D.C. Cir. 2005) .........................................13

*\*Khalaf v. Regan*, No 83-2963, 1985 WL 392 (D.D.C. Jan. 8, 1985) ................................. *passim.*

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994) ................................................6

*Lexmark Intern., Inc. v. Static Control Components, Inc.*, --- U.S. ---, 134 S. Ct. 1377
    (2014) ...................................................................................................7

13751563.2

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)...............................................7,8

*Osbourn v. Visa, Inc.*, 797 F.3d 1057 (D.C. Cir. 2015) ..............................................7

*Reliable Automatic Sprinkler Co. v. Consumer Product Safety Comm'n*, 324 F.3d 726
    (D.C. Cir. 2003) ..............................................................................................15

*Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26 (1976).........................10

*Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83 (1998) .......................................6,7

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) ........................................................14

*Tyler v. U.S. Attorney, Internal Revenue Service and Federal Bureau of Investigations*,
    No. 8:07-cv-361, 2007 WL 3028420 (D. Neb. 2007)................................................14,15

*Valley Forge Christian College v. Americans United for Separation of Church and State*,
    454 U.S. 464, 485-86 (1982) .........................................................................10

*Walpin v. Corp. for Nat. and Comm'y Serv.*, 630 F.3d 184 (D.C. Cir. 2010)..........................13

*Warth v. Seldin*, 422 U.S. 490 (1975) ......................................................................7

*Wightman-Cervantes v. Mueller*, 750 F. Supp. 2d 76 (D.D.C. 2010) .........................14

## STATUTES

5 U.S.C. § 701(a)(2) .............................................................................................16

5 U.S.C. § 702 ..................................................................................................12,15

5 U.S.C. § 704 ..................................................................................................15

18 U.S.C. § 956 ................................................................................................4

18 U.S.C. § 960 ................................................................................................4

18 U.S.C. § 1341 ..............................................................................................4

18 U.S.C. § 1343 ..............................................................................................4

18 U.S.C. § 1952 ..............................................................................................4

18 U.S.C. § 1956(a)(2) ......................................................................................4

18 U.S.C. § 2339C.............................................................................................4

13751563.2

18 U.S.C. § 2441 ...............................................................................................................4

26 U.S.C. § 501(c)(3) ..................................................................................... *passim.*

26 U.S.C. § 6103 ...............................................................................................................3

28 U.S.C. 1331 .................................................................................................................12

28 U.S.C. § 1361 ...........................................................................................................12,13

## RULES, REGULATIONS, and OTHER MATERIALS

26 C.F.R. § 1.501(c)(3) *et. seq.*..................................................................................5

Rev. Rul. 67-149, 1967-1 C.B. 149 .............................................................................2

Rev. Rul. 68-117, 1968-1 C.B. 251 .............................................................................2

Rev. Rul. 68-165, 1968-1 C.B. 253 .............................................................................2

Rev. Rule 68-489, 1968-2 C.B. 210 ............................................................................2

Rev. Rul. 71-460, 1971-2 C.B. 231 .............................................................................2

I.R.M. 7.1.2.1 ....................................................................................................................2

I.R.M. 7.20.........................................................................................................................2

I.R.M. 7.21.........................................................................................................................2

I.R.M. 7.22.........................................................................................................................2

I.R.M. 7.25.........................................................................................................................2

Fed. R. Civ. P. 12(b)(1) ..................................................................................................6

13751563.2

## INTRODUCTION

This suit seeks to compel the United States to investigate "approximately 200 U.S. pro-Israeli-settlement" tax-exempt entities and ultimately revoke their tax-exempt status.  (*See* Doc. 7, at 4, 74-75.)  Plaintiffs accuse these entities of funding or engaging in criminal conduct "in the Occupied Palestinian Territories ('OPT') in the West Bank and East Jerusalem."  (*Id.* at 4.)  Plaintiffs allege that these entities use their tax-exempt status under 26 U.S.C. § 501(c)(3) to "finance[d] ethnic cleansing, theft of private property, and malicious property destruction."  (*Id.*)  Plaintiffs assert that, because these entities have been engaged in criminal activity, the United States should revoke their tax-exempt status but has thus far not done so.  (*See id.* at 4-5.)

There is no basis for this Court to adjudicate plaintiffs' claims.  *First*, none of the 27 named plaintiffs has standing to bring this suit.  *Second*, this Court does not have the authority to grant the relief sought.  It cannot compel the United States to investigate tax-exempt organizations and revoke their tax-exempt status because the United States has investigatory discretion to make such determinations.  Accordingly, this Court should dismiss plaintiffs' case for lack of subject matter jurisdiction.

## STATEMENT OF THE CASE

**1.    Tax-Exempt Organizations Generally**

Under 26 U.S.C. § 501(c)(3), certain entities "organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition . . ., or for the prevention of cruelty to children or animals" shall be exempted from taxation as long as

1

certain requirements and limitations are satisfied.  A section 501(c)(3) tax-exempt organization may conduct all or part of its charitable activities in a foreign country.  *See* Rev. Rul. 71-460, 1971-2 C.B. 231; Rev. Rul. 68-117, 1968-1 C.B. 251; Rev. Rul. 68-165, 1968-1 C.B. 253.  Such organizations may make grants to another tax-exempt organization.  *See* Rev. Rul. 67-149, 1967-1 C.B. 149.  In addition, they may distribute funds to non-charitable organizations as long as the tax-exempt organization ensures that use of its funds is limited to specific projects furthering its own charitable purposes. *See* Rev. Rule 68-489, 1968-2 C.B. 210.  These procedures do not make any distinction regarding the geographic location of the non-exempt organization or the activity.

The Exempt Organizations unit ("EO") within the Tax Exempt and Government Entities division of the Internal Revenue Service ("TE/TG") examines all applications for tax-exempt status and conducts any audit of such entities.  *See* Internal Revenue Manual ("IRM") 7.1.2.1, 7.20, 7.21, 7.22, 7.25.  The Service has stated that its "overarching compliance strategy is to ensure organizations enjoying tax-exempt status comply with the requirements for exemption and adhere to all applicable federal tax laws."  *See* TE/TG Priorities for FY 2016 at 7 (available at https://www.irs.gov/pub/ irs-tege/TEGE_Priorities_for_FY2016.pdf (last accessed April 8, 2016)).  Further, the Service "will balance coverage across [501(c)] subsections and asset classes while optimizing resources on the highest risk returns (e.g. multiple potential issues dealing with exemption, protection of charitable assets or tax gap)."  *Id.*

The Service has stated that this strategy will be achieved through:  (1) "stratifying the universe of exempt organizations into the major subclasses" and examining among

13751563.2

those subclasses; (2) "[d]etermining issues to focus on through a data-driven approach [to] identify the highest risk areas of non-compliance through the use of return data of the EO community and historical information"; and (3) "[i]dentifying areas of high non-compliance risk through stakeholder input, reliable outside data, and public information." *Id.*  The Service has identified five strategic issue areas, including exemption, protection of assets, tax gap, emerging issues, and international. *See id.*

Under 26 U.S.C. § 6103, the Service is required to keep confidential all "return and return information," which includes any information relating to an examination of an organization's exempt status.  Although the Service publishes the identities of exempt organizations and those organizations whose exempt status has been revoked, section 6103 prevents the Service from disclosing whether an organization was examined in the past or is currently under examination.

**2.    Plaintiffs' Complaint**

The complaint contains a multitude of allegations within its 75 pages, which almost entirely relate to actions attributed to tax-exempt entities that are not parties to this litigation.  Although plaintiffs want to curtail the conduct of these non-party entities, they have not brought suit against them.  Rather, plaintiffs have sued the United States in the hopes that an investigation of these entities will lead to a cessation of funding from the United States into the OPT.

Plaintiffs allege that, for at least 40 years, Treasury officials have "turned a blind eye towards the criminal conduct that approximately 200 U.S. pro-Israeli-settlement 501(c)(3)s have either funded or engaged in."  (Doc. 7 at 4.)  They further allege that,

3

because of funds used to expand Israeli settlements in the OPT, tens of thousands of Palestinians have had their homes confiscated or demolished by settlers armed with military hardware.  (*See id.*)  These funds allegedly "financed ethnic cleansing, theft of private property, and malicious property destruction."  (*Id.*)

Plaintiffs contend that tax-exempt entities are the primary source of funding to expand settlements in the OPT, which they allege is illegal activity and violates several federal statutes.  The complaint refers to "200, perhaps 250 pro-settlement" entities operating in the United States, and it specifically names twenty-five entities that allegedly are funding illegal activities in the OPT.  (*Id.*, ¶73.)  Plaintiffs allege that these organizations fund, among other things, violent attacks against Palestinians, destruction of Palestinian homes, curfews requiring families to remain indoors from 9 a.m. to 5 p.m., Jewish-only settlements established against public policy and law, discrimination against non-Jews with respect to housing, health care, utilities, and other basic needs, and ethnic cleansing of Palestinians from the OPT.  (*See id.*, ¶¶17-33, 86-119.)

Plaintiffs allege that these tax-exempt entities have violated numerous federal criminal statutes, including to conspire to, and engage in, money laundering, in violation of 18 U.S.C. § 1956(a)(2), mail fraud and wire fraud (18 U.S.C. §§ 1341 and 1343), foreign travel in aid of racketeering (18 U.S.C. § 1952), war crimes (18 U.S.C. § 2441), financing of terrorism (18 U.S.C. § 2339C), expedition against a friendly nation (18 U.S.C. § 960), and conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country (18 U.S.C. § 956).  (*See* Doc. 7, ¶¶ 66-70.)

4

Plaintiffs allege that "Treasury, for whatever reason, is reluctant to employ [available] law-enforcement tools when it comes to regulating pro-settlement 501(c)(3)s."  (*Id.*, ¶72.)  Plaintiffs state that they have brought this suit to obtain "an appropriate order requiring senior Treasury officials to basically do their job."  (*Id.*, ¶72.)  They seek to compel Treasury to investigate "pro-settlement" tax-exempt entities, among others, and to take appropriate action.  Plaintiffs allege that investigation is necessary because these tax-exempt organizations violate Treasury regulations, *see* 26 C.F.R. § 1.501(c)(3) et. seq., and do not serve exempt purposes within the meaning of section 501(c)(3).  (*See* Doc. 7, ¶¶73-119.)  According to plaintiffs, if such officials "do actually perform the duties and responsibilities they have been assigned, they will recoup billions of dollars for the U.S. Treasury, and in the process promote the clearly-defined U.S. public policy described herein, which has consistently condemned settlement activity for 40 years."  (*Id.*)

Specifically, plaintiffs seek an order requiring Treasury to:

> (a) initiate an investigation into any and all tax-exempt entities based in America which transmit $20,000 or more on an annual basis to any country in the world and, where appropriate, revoke the entity's tax-exempt status; (b) refer all tax fraud and money laundering findings to the IRS and/or U.S. Department of Justice for criminal prosecution; (c) order FinCEN to investigate, the entities, including BL's U.S. subsidiary, and individuals who have engaged in the money laundering activities described herein; and (d) initiate a long-overdue investigation of all of the financial sponsorship of and commission of the violent activities alleged herein on the part of U.S. tax-exempt entities, their donors, and IDF/G4S personnel.

(Doc. 7 at 74-75.)

13751563.2

They also seek an order compelling Treasury to "subpoena and examine all of [Bank Leumi's and Bank Hapoalim's] banking records pertaining to wire transfers made to settlement bank accounts and to the Israeli army's bank account in the last 40 years." (*Id.* at 75.) They characterize their case as a "declaratory judgment action for mandamus relief under 28 U.S.C. § 1361." (*Id.* at 1.)

## STANDARD OF REVIEW

Because any subject matter jurisdiction challenge under Federal Rule of Civil Procedure 12(b)(1) questions the Court's fundamental ability to hear a case, the Court must decide this issue before all others. *See Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 93 (1998). If the Court finds that it does not have subject matter jurisdiction, all other questions are moot and the case must be dismissed. *See id.* at 94. Plaintiffs bear the burden of establishing by a preponderance of the evidence that the Court possesses subject matter jurisdiction over its claims. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage of the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

## ARGUMENT

### I.   NO NAMED PLAINTIFF HAS STANDING TO BRING THIS SUIT

None of the 27 named plaintiffs can establish standing to bring suit over the allegations contained in the complaint. Plaintiffs are primarily concerned bystanders, who have not been *injured* by any action taken by either a tax-exempt entity in Israel or,

6

more importantly, the United States.  They cannot show that the United States *caused* any of the harm alleged in the complaint or that requiring the United States to investigate tax-exempt entities will *redress* the violence and discord that plagues the situation in and around the OPT.  Because no plaintiff has standing to sue, the complaint must be dismissed for lack of subject matter jurisdiction.

In order to maintain a lawsuit in federal court, a plaintiff must "allege[] such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify his exercise of the court's remedial powers on his behalf."  *Warth v. Seldin*, 422 U.S. 490, 498-499 (1975).  Standing is a jurisdictional requirement and its absence is fatal to a plaintiff's ability to maintain suit.  *See Steel Co.*, 523 U.S. at 109-10.  Standing focuses on the party before the Court and not on the issues the party seeks to adjudicate.  Thus, "**an asserted right to have the Government act in accordance [with] the law is not sufficient**, standing alone, to confer jurisdiction on a federal court."  *Allen v. Wright*, 468 U.S. 737, 751 (1984) (emphasis added) (abrogated on other grounds by *Lexmark Intern., Inc. v. Static Control Components, Inc.*, --- U.S. ---, 134 S. Ct. 1377 (2014)).

Each of the plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing that they have standing to bring this action.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Osbourn v. Visa, Inc.*, 797 F.3d 1057, 1063 (D.C. Cir. 2015).  To satisfy "the irreducible constitutional minimum of standing," a plaintiff must satisfy three elements.  *Lujan*, 504 U.S. at 560.  *First*, a plaintiff must show an injury-in-fact – "an invasion of a legally protected interest which is (a) concrete and

7

particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.  Second*, a plaintiff must show "a causal connection between the injury" and the challenged action. *Id.*  "Third, it must be likely, as opposed to merely speculative, that the [plaintiff's] injury will be redressed by a favorable decision." *Id.* at 561.

Although the complaint states that "[a]ll plaintiffs share mutual concerns which have prompted them to join this litigation," it only contains allegations related to standing for three of the 27 named plaintiffs:  John Doe, Susan Abulhawa, and Michael Several.  (*See* Doc. 7, ¶¶6-11.)  Because the complaint is devoid of any allegations of how the remaining 24 plaintiffs may have standing in this case, those plaintiffs must be dismissed from this case for failure to meet their jurisdictional burden.[1]  Moreover, the allegations pleaded as to John Doe, Susan Abulhawa, and Michael Several are insufficient to establish standing, and they must be dismissed as well.

A District of Columbia district court previously addressed whether sixteen individual plaintiffs had standing to seek declaratory and injunctive relief to compel the Service to revoke the tax-exempt status of six U.S. corporations.  *See Khalaf v. Regan*, No 83-2963, 1985 WL 392, at *1 (D.D.C. Jan. 8, 1985).  The plaintiffs in that case alleged that

---

[1] Those plaintiffs are Avraham Peled, a.k.a Miko Peled, Peggy Ahwesh, James Anderson, Alice Bach, Antoine Boghossian, Gloria Boghossian, Tania Boghossian, John Boyd, Marina Buhler-Miko, James Cobey, Abdur-Rahim Dudar, Ty Ebright, Abbas Hamideh, Steven Goosen, Ray Gordon, Linda Mansour, Donna Nassour, Robin Nicholas, Alan Nofal, Michael Rabb, Mary Schultz, Lynn Schultz, Rich Siegel, Grant Smith, Michael Smith, Lou Stone, Robie Tenorio, John Van Wagoner, and Linda Vasquez.

the tax-exempt entities supported policies antithetical to them, including settlement activity in the OPT.  *See id.*  The court held that none of the named plaintiffs could establish standing, because "some [allegations] do not constitute a judicially cognizable wrong," and "[n]one of them . . . whether or not it may be possible to imply some causal relationship between them and the tax benefits conferred by defendants, are susceptible of being redressed by withdrawal of those benefits."  *Id.*  The court observed that the allegations "are each the direct and proximate result of actions taken by independent third parties not now, and not likely ever to be, before this or any U.S. court, and are certainly no more likely to be undone by any order of this Court, much less the one prayed."  The defects precluding standing in *Khalaf* apply equally here.

*First*, neither John Doe nor Michael Several have alleged a concrete and particularized injury-in-fact.[2]  John Doe, who is from Egypt, is concerned about Treasury's alleged failure to monitor organizations, "has heard from various Palestinian friends" about the "atrocities," and "has recently learned this criminal activity has been largely subsidized by the American taxpayer."  (Doc. 7, ¶7.)  John Doe has personally witnessed "atrocities that the Mubarak regime inflicted on ordinary Egyptian citizens." (*Id.*, ¶8)  Like John Doe, Michael Several is concerned about settlement expansion in the

---

[2] Susan Abulhawa, a resident of Pennsylvania, is the only plaintiff who has alleged a specific injury to herself, rather than to Palestinians generally.  (*See* Doc. 7, ¶9 ("The trajectory of my life has been determined and shaped by Israel's theft of my home").) The conversion of real property is a concrete and particularized injury-in-fact.  *See Khalaf*, 1985 WL 392, at *2.  However, like John Doe and Michael Several, she cannot establish the remaining standing elements.

13751563.2

OPT and its effect on the "ordinary Palestinian citizen." (*Id.*, ¶10.)  He alleges that he

has done "significant research on U.S. donors and pro-settlement tax-exempt entities

which have provided financial support to the settlement enterprise." (*Id.*)  Several

alleges that these entities have "undermined American policy supporting a viable

Palestinian State," and have "promoted widespread violence against Palestinians."  (*Id.*,

¶ 11)  The allegations raised by Doe and Several are merely "'**the psychological**

**consequence presumably produced by observation of conduct with which one**

**disagrees**,' which the Supreme Court found insufficient for standing purposes *in Valley*

*Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464,

485-86 (1982)." *Khalaf*, 1985 WL 392, at *1 (emphasis added).

> *Second*, plaintiffs cannot establish a causal link between an alleged injury and the

challenged conduct.  Plaintiffs are required to show that their alleged injuries "can be

fairly traced to the challenged action of the defendant, and not injury that results from

the independent action of some third party not before the court."  *See Simon v. Eastern*

*Kentucky Welfare Rights Org.*, 426 U.S. 26, 42-43 (1976).  Plaintiffs have sued the United

States, not the organizations giving money to Israeli settlement activities or carrying out

the alleged activity in the OPT.  To establish standing, they must show that the alleged

criminal activity would not have occurred but for the grant of, and failure to investigate

or revoke, tax-exempt status by the United States.  They cannot make that showing.

> Susan Abulhawa seeks redress for the alleged taking of her family's land and her

inheritance by the Israeli government.  (*See* Doc. 7, ¶9.)  The complaint is devoid of any

detail regarding the alleged taking, such as the property's location or the date and

manner of the taking, or how the taking was the direct result of money received from tax-exempt organizations.  As was the case in *Khalaf*, "it could not possibly be shown that [she] would not have been ejected [from her land] but for the tax-exempt status defendants may have improperly conferred."  1985 WL 392, at *2.  Likewise, Michael Several and John Doe cannot establish the required corollary that organizations would not give money to fund settlement activities in the OPT without tax-exempt status.

*Third*, no plaintiff can establish that their alleged injuries will be redressed by a favorable decision.  In *Allen*, the Supreme Court addressed the scope of redressability. *See* 468 U.S. at 756-59.  The plaintiffs there were the parents of African-American children attending public schools.  They alleged that the IRS had failed to deny tax-exempt status to discriminatory private schools, thereby interfering with the efforts of courts and governments to provide racially integrated public schools.  The Supreme Court held that the parents lacked standing because it was "entirely speculative" whether withdrawal of tax-exempt status would have any effect on the public schools or would result in any child transferring to the public school system.  *See id.* at 758. Similarly, in *Fulani v. Brady*, the D.C. Circuit held that a presidential candidate did not have standing to challenge the tax-exempt status of the Commission on Presidential Debates after she was excluded from a debate.  *See* 935 F.2d 1324, 1328 (D.C. Cir. 1991). The court held that "where a party is seeking simply to remove a third party's entitlement to a tax exemption, the exemption likely will not bear sufficient links of traceability and redressability to the alleged injury to warrant standing."  *Id.* (discussing *Allen*, 468 U.S. at 751).

11

As in *Allen, Fulani,* and *Khalaf*, the plaintiffs here cannot show that the revocation of tax-exempt status will lead to the cessation of the alleged criminal activity in the OPT or the restoration of Abulhawa's property.  Susan Abulhawa wants "accountability and restitution from those who dismantled my family, stole my inheritance . . . .  I want a court, somewhere, somehow, to hold accountable those who have financed my pain of dispossession and exile." (Doc. 7, ¶9.)  Similarly, Michael Several "remains hopeful that if Treasury addresses how non-profit foundations and organizations have abused their tax-exempt status by financing rampant criminal activity, tax-exempt funding of the settlements will cease."  (*Id.*, ¶12.)  These allegations highlight the fact that plaintiffs' grievance is with third-parties who are not part of this lawsuit, *i.e.*, the tax-exempt entities.  An order compelling the United States to investigate their tax-exempt status will not "hold accountable those who have financed" Abulhawa's pain or prevent funding in the settlements.  Accordingly, this Court cannot redress plaintiffs' alleged injuries through the relief sought.

## II.    THIS COURT DOES NOT HAVE AUTHORITY TO GRANT THE REQUESTED RELIEF

Plaintiffs' complaint is captioned as a "Declaratory Judgment Action For Mandamus Relief Under 28 U.S.C. § 1361 Against United States Department of the Treasury."  (Doc. 7 at 3.)  As grounds for jurisdiction, plaintiffs invoke 28 U.S.C. §§ 1331 and 1361 as well as 5 U.S.C. § 702.  Whether this case seeks a declaratory and injunctive relief, a writ of mandamus, or all three, this Court does not have subject matter jurisdiction to grant the relief sought.  Thus, even if this Court were to find that some or all of the plaintiffs had standing to sue, the case must still be dismissed.

### A. Plaintiffs are not entitled to a writ of mandamus because this Court cannot order the United States to perform a discretionary act.

The complaint appears to seek a writ of mandamus ordering Treasury officials to initiate investigations into, and potentially revoke, the tax-exempt status of any exempt organization that gives more than $20,000 overseas. (*See* Doc. 7 at 74-75.) Mandamus is an extraordinary remedy that seeks to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to a plaintiff." 28 U.S.C. § 1361. Plaintiffs are entitled to mandamus only if they establish that: "(1) [they have] a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (citations omitted). Plaintiffs cannot meet these requirements, and their mandamus claims must be dismissed.

*First*, plaintiffs cannot establish that they have a clear right to the relief sought. The United States does not owe any individual the duty to examine the tax-exempt status of a third party. There is no statutory or regulatory authority that grants third parties the ability, much less an enforceable right, to seek to compel Treasury to examine an unrelated party's tax-exempt status. Without such authority, plaintiffs have no clear right to a writ of mandamus. *See, e.g.*, *Walpin v. Corp. for Nat. and Comm'y Serv.*, 630 F.3d 184, 188 (D.C. Cir. 2010) (affirming dismissal of a claim for a writ of mandamus because a former inspector general had no enforceable right to continued employment under the Inspector General Act).

13

*Second*, the United States has no clear duty to act, because the decision regarding whether to examine an organization's tax-exempt status is entirely within Treasury's discretion.  A writ of mandamus is not available to compel discretionary acts.  *See Heckler v. Ringer*, 466 U.S. 602, 616 (1984); *Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996); *Wightman-Cervantes v. Mueller*, 750 F. Supp. 2d 76, 81 (D.D.C. 2010); *Cox v. Secretary of Labor*, 739 F. Supp. 28, 30 (D.D.C. 1990).  Accordingly, courts have held that a private citizen cannot compel a government agency to open an investigation.  *See, e.g., Tyler v. U.S. Attorney, Internal Revenue Service and Federal Bureau of Investigations,* No. 8:07-cv-361, 2007 WL 3028420, at *2 (D. Neb. 2007) (dismissing a mandamus petition to compel the FBI to investigate and pursue criminal changes for tax collection); *Gant v. FBI*, 992 F. Supp. 846, 848 (S.D.W. Va. 1998) (same).  In *Tyler,* the court held that "no power or jurisdiction is vested in this court to control, whether by writ of mandamus or otherwise, the exercise by the United States Attorney of the discretion and judgment which the law entrusts to him in the prosecution of persons suspected of the violation of the laws of the United States."  2007 WL 3028420, at *2 (citations omitted).  For this reason, courts will not second guess agency determinations of how to expend scarce investigatory resources.  *See, e.g., Barron v. Reich*, 13 F.3d 1370, 1376 (9th Cir. 1994) (denying writ of mandamus seeking to require Department of Labor to examine wage claims outside agency's two-year investigation policy because the policy "may enable the Department of Labor to conserve scarce resources with respect to any given investigation-and thus may leave more resources to be expended on other investigations or other activities").

14

Here, plaintiffs, among other things, seek an order compelling the United States to open investigations into "all tax-exempt entities based in America which transmit $20,000 or more on an annual basis to any country in the world and, where appropriate, revoke the entity's tax-exempt status."  (Doc. 7 at 74.)  As in *Tyler*, this Court does not have the authority or jurisdiction to compel the Commissioner of Internal Revenue to examine the tax-exempt status of another entity, because such an investigation is a discretionary, rather than ministerial, act.  For that reason, the decision of whether to investigation is left entirely to the discretion of the Commissioner.  Plaintiffs, therefore, are not entitled to a writ of mandamus.

### B.     Plaintiffs cannot assert a claim under the Administrative Procedures Act because there has been no final agency action.

Plaintiffs appear to seek declaratory and injunctive relief under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, to compel the United States to initiate investigations into certain exempt organizations and revoke their tax-exempt status.  This Court has no jurisdiction under the APA over plaintiffs' claims because there has been no final agency action and the APA bars judicial review of actions committed to agency discretion.  Accordingly, the United States has not waived its sovereign immunity with respect to the relief sought and plaintiffs' claims must be dismissed.

The APA provides a right to judicial review only for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see also Reliable Automatic Sprinkler Co. v. Consumer Product Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir.

13751563.2

2003) ("If there was no final agency action here, there is no doubt that appellant would lack a cause of action under the APA.").  A final agency action "(1) marks the consummation of the agency's decision making process – it must not be of a merely tentative or interlocutory nature; and (2) the action must be one which rights or obligations have been determined or from which legal consequences will flow." *Domestic Sec., Inc. v. SEC*, 333 F.3d 239, 246 (D.C. Cir. 2003); *see also Bennett v. Spear*, 520 U.S. 154, 178 (1997); *DTCC Data Repository (U.S.) LLC v. U.S. Commodity Futures Trading Comm'n*, 25 F. Supp. 3d 9, 15 (D.D.C. 2014); *Assoc. of Admin. Law Judges v. U.S. Office of Personnel Mgmt.*, 640 F. Supp. 2d 66, 72 (D.D.C. 2009).  With few exceptions, none of which are applicable here, "if there is no final agency action, there is no basis of review of the government's decision."  *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001).

A final agency action can be either an action or a decision to not act.  Here, plaintiffs complain that the United States has previously refused to investigate the tax-exempt status of certain organizations.  In essence, plaintiffs claim that the United States has refused to act.  But the Service has made no such decision, and the complaint contains no allegation otherwise.  Accordingly, there has been no final action.

Moreover, the APA bars judicial review of any agency action "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  An agency's decision regarding whether to take enforcement action is a classic example of such discretion because an "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities."  *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *see also Am. Disabled for Attendant Programs Today v. HUD*, 170 F.3d 381, 386 (3d Cir. 1999)

16

(holding HUD's decision to enforce minimum handicapped access standards for federally funded housing was within agency discretion).  Agency enforcement decisions are only reviewable if Congress imposes explicit restrictions on the scope of agency enforcement discretion and provides judicially manageable standards for determining whether the restrictions have been violated.  *See Hotel & Restaurant Emples. Union, Local 25 v. Smith*, 846 F.2d 1499, 1520 (D.C. Cir. 1988).

Here, Congress did not impose any restrictions, let alone explicit restrictions, on the scope of the Service's enforcement discretion regarding exempt organizations under 26 U.S.C. § 501(c)(3).  And, because there are no such restrictions, there cannot be any judicially manageable standards to allow this Court to determine whether the Service has violated any requirement with regard to examining exempt organizations.  Thus, under the APA, the Service's decision to examine or not examine any organization is not reviewable.

//

//

//

//

//

//

//

//

//

17

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed for lack of subject matter jurisdiction.

Dated:    April 8, 2016                              Respectfully submitted,

                                                     CAROLINE D. CIRAOLO
                                                     Acting Assistant Attorney General

                                                     /s/ Christopher J. Williamson
                                                     CHRISTOPHER J. WILLIAMSON
                                                     OLGA L. TOBIN
                                                     Trial Attorneys, Tax Division
                                                     U.S. Department of Justice
                                                     Ben Franklin Station, P.O. Box 227
OF COUNSEL:                                          Washington, DC  20044
                                                     Telephone: (202) 307-2250
VINCENT H. COHEN, JR.                                Fax: (202) 514-6866
Acting United States Attorney                        christopher.j.williamson@usdoj.gov

18

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on April 8, 2016, I filed the foregoing MEMORANDUM OF LAW IN

SUPPORT OF THE UNITED STATES' MOTION TO DISMISS with the Clerk of Court

using the CM/ECF system, which will send notice of this filing to all parties registered

to receive such notice, including plaintiff's counsel.


/s/ Christopher J. Williamson
CHRISTOPHER J. WILLIAMSON

13751563.2