IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SUSAN ABULHAWA *et. al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-2186-RDM |
| | ) | |
| UNITED STATES DEPARTMENT OF TREASURY | ) | |
| and UNITED STATES DEPARTMENT OF THE | ) | |
| TREASURY SECRETARY JACOB LEW, in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| —————————————————————— | ) | |

## THE UNITED STATES' OPPOSITION TO
## PLAINTIFFS' MOTION FOR RECONSIDERATION

On March 4, 2017, the Court granted the United States' motion to dismiss the complaint, denied plaintiffs' leave to amend the complaint, and denied Abrams' motion to intervene. *See* Doc. 21. The Court concluded no one had standing to bring suit against the United States because (a) the allegations could not establish the United States caused the alleged injuries and (b) the relief sought would not redress those injuries. *See* Doc. 22 at 11-16, 16-19.

Plaintiffs have moved for reconsideration of the Court's decision. (*See* Doc. 23.) They argue the Court erred in three ways: (1) the Court adopted "a rigorous standard of proof" in evaluating causation; (2) "the Court also failed to recognize that a Treasury investigation would redress Plaintiffs' injuries;" and (3) the Court did not adequately consider "the nature of the criminal activities engaged in by the settles and financed by U.S. tax-exempt entities," by supposedly ignoring certain allegations. (*Id.* at 1.)

15325836.1

Plaintiffs' arguments are meritless and do not establish that the Court erred on the facts or law in reaching its decision.  In determining whether any plaintiff had standing, the Court applied the standard of review set forth by the Supreme Court and D.C. Circuit.  *See id.* at 10 ("at the motion to dismiss stage, . . . 'the plaintiff must sufficiently allege a 'concrete and particularized' injury that is 'fairly traceable to the challenged action of the defendant' and 'likely' to be 'redressed by a favorable decision'") (quoting *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017) in turn quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  The Court also concluded the relief sought was not "likely" to redress the alleged injuries because the allegations were too speculative and remote to satisfy redressability.  *See* Doc. 22 at 18-19.  Finally, the Court explicitly accepted as true all of the allegations in both the amended and second amended complaints, including the allegations described in plaintiffs' motion. *See* Doc. 22 at 9 ("Are the factual allegations contained in either pleading, if accepted as true, sufficient to establish that at least one plaintiff or putative plaintiff had Article III standing to pursue this litigation?").  Accordingly, the motion, which amounts to nothing more than a disagreement with the Court's decision, should be denied.

## STANDARD OF REVIEW

Rules 59(e) and 60(b) "dictate when a party may obtain reconsideration of a final judgment," like the Court's order here.  *Ali v. Carnegie Inst.*, 309 F.R.D. 77, 80 (D.D.C. 2017).  Under both rules, "the party seeking reconsideration bears the burden of establishing that such relief is warranted under the circumstances."  *Id.* at 81.  It is "well established that 'motions for reconsideration,' whatever their procedural basis, cannot

2

be used as 'an opportunity to reargue facts and theories on which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.'" *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (quoting *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)).

Plaintiffs do not specify which Federal Rule forms the predicate for their motion. Rule 59(e) permits a party to file "[a] motion to alter or amend a judgment" within "28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  Rule 60 "allows a party to seek relief from a final judgment 'within a reasonable time' after entry of judgment, but only for specified reasons." *Ali*, 309 F.R.D. at 80-81 (quoting Fed. R. Civ. P. 60(b)). Plaintiffs filed their motion on April 3, 2017, or 31 days after the entry of the Court's March 4, 2017 order.  Because plaintiffs filed their motion more than 28 days after entry of judgment, their motion should be reviewed under Rule 60(b).  But even if plaintiffs' motion is reviewed under Rule 59(e), the end result will be the same because plaintiffs cannot show the Court erred under the standards applicable to either rule.

"Motions under Rule 59(e) are 'disfavored' and the moving party bears the burden of establishing 'extraordinary circumstances' warranting relief from final judgment." *Lempert v. Power*, 45 F. Supp. 2d 79, 82 (D.D.C. 2014) (quoting *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001)).  Rule 59(e) motions are "discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks omitted); *see also Exxon Shipping Co. v.*

15325836.1

*Baker*, 554 U.S. 471, 485 n. 5 (2008); *Lempert*, 45 F. Supp. 3d at 82; Wright & Miller, FED.

PRAC. & PROC. § 2810.1.  Under Rule 59(e), courts require "a very exacting standard" to

demonstrate "clear error."  *Bond v. U.S. Dep't of Justice*, 286 F.R.D. 16, 22 (D.D.C. 2012).

The "final judgment must be 'dead wrong' to constitute clear error."  *Lardner v. FBI*, 875

F. Supp. 2d 49, 53 (D.D.C. 2012) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*,

866 F.2d 228, 233 (7th Cir. 1988)); *see Slate v. ABC*, 12 F. Supp. 3d 30, 35 (D.D.C. 2013).

Rule 60(b) "cannot be employed simply to rescue a litigant from strategic choices

that later turn out to be improvident."  *Smalls v. United States*, 471 F.3d 186, 191 (D.C.

Cir. 2006).  For this reason, "reconsideration pursuant to Rule 60 is a remedy that

should be sparingly used."  *Ali*, 309 F.R.D. at 81 (citing *Kramer v. Gates*, 481 F.3d 788, 792

(D.C. Cir. 2007)).  Although not specified, plaintiffs may be seeking relief for "mistake,

inadvertence, surprise, or excusable neglect," or "any other reason that justifies relief."

Fed. R. Civ. P. 60(b)(1), (b)(6).  A Rule 60(b)(1) motion "allow[s] district courts to correct

only limited types of substantive errors."  *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006).

Both the Supreme Court and D.C. Circuit have "consistently held that courts should

hesitate to grant Rule 60(b)(6) motions except in 'extraordinary circumstances.'"  *Slate*,

12 F. Supp. 3d at 36 (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)); *see also*

*Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005); *Kramer*, 481 F.3d at 792.

## ARGUMENT

### I.    The Court Did Not Err In Concluding Plaintiffs Failed To Establish Causation.

Plaintiffs allege a chain of causation eventually linking (a) the grant of section

501(c)(3) status to certain charities to (b) the alleged injuries.  Plaintiffs argue "the Court

4

fail[ed] to consider . . . '[t]he fact that the potential injury would be the result of a chain of events does not always preclude standing.'"  (Doc. 23 at 14-15 (citing 15 Moore's Fed. Prac. § 101.40).)  Thus, plaintiffs contend the Court's causation analysis was in error. The Court, however, did not conclude that a chain of events could never establish causation; rather, it held the specific alleged chain of events could not do so because it was too speculative.  Reconsideration is not warranted.

In analyzing causation, the Court recognized plaintiffs' alleged chain of events and described their argument as follows:

> '[w]ithout having . . . [§] 501(c)(3) status bestowed on them by the [Internal Revenue Service], these [U.S.-based] organizations would not have been able to solicit contributions and transfer funds to the settlement[s],' which, in turn, would mean that those donated funds would not be available 'to arm violent settlers' or 'fund the illegal theft of . . . property,' and, accordingly, Plaintiffs would not have been injured.

Doc. 22 at 12 (quoting Doc. 15 at 8-9, 11) (brackets in original).  The Court noted "[p]laintiffs' theory of causation is based on speculation upon speculation about how third parties might act."  Doc. 22 at 14.  The Court held it was not required to assume the validity of allegations "like those at issue here, that speculate about future events and that purport to predict how third parties might someday react to changed circumstances."  *Id.* (citing *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015); *Osborn v. Visa Inc.*, 797 F.3d 1057, 1064 (D.C. Cir. 2015)).  The Court rejected plaintiffs' theory because the "chain of causation linking the Treasury Department's alleged 'failure to monitor' the § 501(c)(3) status of U.S.-based charities and the injuries sustained by

5

Plaintiffs 'is attenuated at best,'" and, "as in *Allen*, that chain relies on a series of speculative inferences about the 'independent action[s] of some third part[ies] not before the [C]ourt." Doc. 22 at 13 (quoting *Allen v. Wright*, 468 U.S. 737, 757, 759 (1984)).

Plaintiffs do not explain how the Court erred in concluding it was speculative that the grant of section 501(c)(3) status caused the alleged injuries. Plaintiffs do not contest that their chain of causation requires the involvement of two sets of third parties to get from the Treasury Department to the alleged injury (*i.e.,* the U.S.-based charities and the Israel-based entities). Plaintiffs merely disagree with the Court's analysis, and such disagreement does not support reconsideration. *See United States ex rel. Becker v. Westinghouse Savannah River Co.,* 305 F.3d 284 (4th Cir. 2002); *Slate*, 12 F. Supp. 3d at 35.

The Court is correct that independent action by either of the U.S. or Israel-based entities would be sufficient to break the alleged chain of causation:

> Plaintiffs speculate, for example, that (1) the donors to the U.S.-based § 501(c)(3) organizations made their contributions only because those entities are tax-exempt; (2) the U.S. charities would be unable to find alternative sources of funding; (3) the Israeli settlers could not obtain other sources of funding; and (4) absent the continued influx of funding from U.S. charities, the Israeli settlers would be unable to acquire new land and might even give up the land that they currently possess. ***At each of these links, a third-party actor could break the causal chain***—a donor might decide to donate to one of the U.S.-based § 501(c)(3) organizations because he or she supports its goals, not because it is tax exempt; other donors might take the place of any donors who will contribute only to tax-exempt groups; the Israeli settlers may already possess the "weapons" and "equipment" that they need to remain in the disputed areas; or they may be committed to staying put, regardless of the support they receive from U.S.-based charities.

Doc. 22 at 13-14 (emphasis added).  Plaintiffs alleged injuries are therefore "not fairly traceable to the Government conduct . . . challenge[d] as unlawful." *Allen*, 468 U.S. at 756-57.  Because the Court correctly determined plaintiffs had not shown the United States caused the alleged injuries, plaintiffs' reconsideration motion should be denied.

## II.     Investigation By The Treasury Department Cannot Redress Plaintiffs' Alleged Prospective Injuries.

Plaintiffs contend the Court erred in determining their requested relief would not redress their alleged prospective injuries, because it based its conclusion on the erroneous finding that Israel-based settlements are not "independent actors."  (Doc. 22 at 6 (stating they cannot "comprehend how this Court misread their complaint and summarily conclude, without any evidence at all, that settlement beneficiaries based in Israel are independent actors *vis-à-vis* U.S. based tax-exempt entities that send millions of dollars each year to the settlements").)  Plaintiffs believe the survival of the Israeli settlements is dependent on the funding received from the United States.  They further believe, if the section 501(c)(3) status of those entities is stripped, they would cease to give funds to Israeli settlements.  Thus, in their view, the Israel-based entities are not independent of the U.S.-based entities.  And, because they are not independent, their requested relief would redress future injuries.

The Court, however, did not base its redressability analysis on any finding regarding the independence of the Israeli-based entities from the U.S.-based entities. Rather, the Court held "the likelihood that the requested relief would actually redress an imminent harm to any of the plaintiffs is both speculative and remote."  Doc. 23 at

15325836.1

18.  Because plaintiffs did not challenge the actual grounds for the Court's decision on

redressability, their reconsideration motion should be denied.

The Court characterized plaintiffs' argument as follows:

> It is conceivable, Plaintiffs argue, that if the Treasury
> Department investigates a particular U.S.-based § 501(c)(3)
> organization, the Department might revoke the
> organization's tax-exempt status, which might decrease the
> financial contributions made to that organization, which
> might lead to fewer funds sent by that organization to
> Israeli-based nonprofits, which might lead those Israeli
> nonprofits to reduce expenditures in support of West Bank
> or East Jerusalem settlers, who, in turn, might have fewer
> funds to take steps that might ultimately injure Plaintiffs.

Doc. 22 at 18.  The Court rejected the ability of this chain of inferences to redress

plaintiffs' alleged injuries.

> It requires the Court to "pile conjecture on conjecture," *West*,
> 845 F.3d at 1237, forcing it to assume, for example, that
> donors would stop contributing funds to U.S.-based
> nonprofits stripped of their tax-exempt status; that Israel-
> based nonprofits would not find some other funding source
> to fill any gap created by a reduction in U.S. financial
> support; and, most importantly, that the individual actors—
> the settlers in the West Bank and East Jerusalem—would
> refrain from taking actions that could injure Plaintiffs.  Such
> "unadorned speculation as to the existence of a relationship
> between the challenged government action and the third-
> party conduct will not suffice to invoke the federal judicial
> power." *Scenic America*, 836 F.3d at 50 (quotation marks
> omitted).

Doc. 22 at 18.  Thus, even if the Treasury Department revoked the section 501(c)(3)

status of all such U.S.-based charities, plaintiffs could not show that their alleged future

injuries would not occur.

15325836.1

Plaintiffs, therefore, could not establish that the "'the declaratory judgment sought w[as] the *sine qua non* for, or would 'significantly increase [their] likelihood' of' staving off the future injuries they detail in their proposed second amended complaint." Doc. 22 at 18 (quoting *Hispanic Affairs Project v. Perez*, 15-cv-1562, 2016 WL 4734350, at *9 (D.D.C. Sept. 9, 2016) (in turn quoting *Lichoulas v. FERC*, 606 F.3d 769, 775 (D.C. Cir. 2010)) (brackets in original).  Thus, even accepting the allegations contained in the complaint as true, the Court correctly held that plaintiffs "have failed to satisfy the redressability requirement of Article III standing."  Doc. 22 at 18-19.

### III.    The Court Did Not Fail To Consider Any Allegation In Rendering Its Opinion.

Finally, plaintiffs contend that the Court "glossed over important facts in the complaint," including that "[b]ased upon numerous allegations made in the complaint, it is obvious that these tax-exempt entities have funded criminal activity." (Doc. 23 at 1, 5.)  Plaintiffs argue the Court should reconsider its decision because it supposedly did not consider these facts.  (*See id.*)  This argument is meritless.

The Court repeatedly states that, for purposes of deciding the United States' motion to dismiss, it assumes the validity of the allegations contained in the complaint. *See* Doc. 22 at 2-3 ("Because Defendants 'challenge[] the adequacy of [the first amended] complaint and [exhibits] to support [Plaintiffs'] standing,' the Court 'accept[s] [their] well-pleaded factual allegations as true and draw[s] all reasonable inferences from those allegations in [Plaintiffs'] favor.") (citations omitted and brackets in original); 7 "Accordingly, '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim [of standing] that is plausible on its

9

face.'" (citations omitted); 9 ("Are the factual allegations contained in either pleading, if accepted as true, sufficient to establish that at least one plaintiff or putative plaintiff had Article III standing to pursue this litigation?"); 18-19 ("Even accepting the allegations contained in Plaintiffs' proposed second amended complaint as true, they have failed to satisfy the redressability requirement of Article III standing.").  The Court, therefore, did not err and reconsideration is inappropriate.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for reconsideration should be denied.

Dated:   April 14, 2017                           Respectfully submitted,

                                                  DAVID A. HUBBERT
                                                  Acting Assistant Attorney General

                                                  /s/ Christopher J. Williamson
                                                  CHRISTOPHER J. WILLIAMSON
                                                  OLGA L. TOBIN
                                                  Trial Attorneys, Tax Division
                                                  U.S. Department of Justice
                                                  Ben Franklin Station, P.O. Box 227
                                                  Washington, DC  20044
                                                  Telephone: (202) 307-2250
                                                  Fax: (202) 514-6866
                                                  christopher.j.williamson@usdoj.gov

Of counsel:

CHANNING D. PHILIPS
United States Attorney

15325836.1

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 14, 2017, I filed the foregoing THE UNITED STATES'

OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION with the Clerk of

Court using the CM/ECF system, which will send notice of this filing to all parties

registered to receive such notice, including plaintiff's counsel.


/s/ Christopher J. Williamson
CHRISTOPHER J. WILLIAMSON

15325836.1