IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUSAN ABULHAWA, *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | Civil Action No. 15-2186 (RDM) |
| v. ) | |
| ) | |
| UNITED STATES DEPARTMENT OF THE ) | |
| TREASURY, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

## REPLY TO THE UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION

Come now the Plaintiffs herein and hereby respond to The United States' Opposition to Plaintiffs' Motion for Reconsideration filed April 14, 2017 (hereinafter "Opposition"). The United States' Opposition does not address: a) the case law cited in the Plaintiffs' motion, for example: *United States v. SCRAP*, 412 U.S. 669 (1973), *Florida State Conference of N.A.A.C.P. v. Bowning*, 522 F.3d 153, 1162-1164 (11th Cir. 2008), *Church of Ehtereal Joy v. Commissioner*, 83 T.C. 20 (Tax. Ct. 1984), *U.S. v. Jones University*, 615 F.3d 544 (2012), *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685 (7th Cir. 2008); and b) does not address Plaintiffs' argument that this Court has the authority to set aside an agency ruling if it is not in accordance with the law. 5 U.S.C. 706(2)(a). As detailed herein, and as detailed in the complaint, that is certainly the case here.

For example, the opposition does not address the $2 billion money-laundering scheme described in the complaint, nor does it touch on the 501(c)(3)'s violation of over eight federal criminal statutes and numerous Treasury regulations. For example, 18 U.S.C. § 960 bars U.S.

citizens from funding a foreign militia unit, and 18 U.S.C. § 1956 bars money laundering activity like the activity engaged in by the 501(c)(3)'s, i.e. sending money overseas to finance violence. As stated in *Boim*, when you send funds to an entity that engages in both criminal and charitable activities, you are donating money to an entity that is engaged in international terrorism. 549 F.3d 685 (7th Cir. 2008). "When a person donates money to an organization, like in *Boim II*, the 'foreseeable consequence' of that action is that the money will be used to further the goals of the organization, or to 'augment' the organization's resources." *Kaplan v. Al Jazeera*, 2011 U.S. Dist. LEXIS 61373, *20 (*quoting Boim II*, 549 F.3d 685 at 693-94). These 501(c)(3)'s knew when they were sending money overseas that they were funding settlement expansion, ethnic cleansing, theft of private property, and the purchase of sophisticated military hardware used by settlers to steal Palestinian land from owners like Plaintiff Kateeb.

Plaintiffs cited the example of Amitz in their Motion for Reconsideration, a pro-settlement 501(c)(3) that encourages its donors to send "a tax-deductible check for night vision binoculars, bullets, and guard dogs." (Motion to Recon. Pg. 17). Defendants did not address this example of clearly arbitrary and capricious conduct on the part of Treasury, when this is a clear example of the cause of Plaintiffs' injuries complained of. Amitz is not the only example of an aggressive 501(c)(3) based on U.S. soil soliciting funds to support criminal activity, and in the process secure a tax write-off. Thus, stripping Amitz of its tax-exempt status and similar 501(c)(3)'s that boast of funding criminal activity would eliminate tax-deductible donations for M16's, bullets and guard dogs which are used by violent settlers to steal more Palestinian land and expand their settlements. As should be obvious to this Court, there is a definite problem that Treasury refuses to address, and therefore without this Court's intervention, innocent civilians

will continue to die in the Occupied Territories, and Palestinians will continue to lose their homes and valuable olive groves.

These violations by the tax-exempt entities complained of are a clear indication of arbitrary and capricious conduct by Treasury in applying its regulations. The reason—an administrative agency that violates its own regulations has inherently engaged in arbitrary and capricious conduct, as citations in Plaintiffs' Memorandum in Opposition confirm. *Also see* 5 U.S.C. 706(2)(a). Plaintiffs have repeatedly pointed out that that these tax-exempt entities are not charitable entities, but merely "pass-thru entities." Their sole function is to raise money for overseas settlements, the purchase of sophisticated military hardware, and the ethnic cleansing of all nearby Palestinian villages. These are not legitimate purposes per 501(c)(3) Treasury regulations. In other words, the tax-exempt entities are not in the business of setting up soup kitchens and homeless shelters on U.S. soil. As a result of these tax-exempt entities financing criminal activity abroad, Treasury loses $2 billion in tax revenues annually. None of these points are addressed or even distinguished in the opposition. The Defendant obviously assumes this Court will simply rubber stamp its original opinion. They also do not address the argument made by Plaintiffs that Treasury has adopted a "double standard" when dealing with pro-settlement 501(c)(3)'s. (Amend. Compl. pg. 6). As a result of this arbitrary and capricious application of 501(c)(3) regulations by the Treasury Department, this Court can order the investigation that Plaintiffs have requested herein.

Furthermore, Treasury argues the Court acted correctly because it "did not conclude that a chain of events could never establish causation; rather, it held the specific alleged chain of events could not do so because it was too speculative." (Opposition at 5). With all due respect, there is nothing speculative about the $2 billion money laundering scheme described in the suit,

or the ethnic cleansing of 400,000 Palestinians from the occupied territories. Moreover, Treasury fails to mention or distinguish *United States v. SCRAP*, 412 U.S. 669 (1973), where the Supreme Court found standing in a far more "attenuated" setting.

The chain of events in *U.S. v. SCRAP* was reliant upon hypothetical actions by third party actors, in specific contrast to the allegations described herein. As the Plaintiffs have repeatedly argued, these settlements were solely dependent for their survival and growth on contributions sent by pro-settlement 501(c)(3)'s. They are therefore not independent entities. Indeed, Defendant's Opposition simply argues that the Court was correct without distinguishing any of the Plaintiffs' case law, and without addressing any of the errors that Plaintiff maintains that this Court committed in ruling on the motion to dismiss. For example, adopting a standard more suitable in the summary judgment setting, rather than the motion to dismiss stage. Defendants also inexplicably fail to distinguish or counter Plaintiffs' arguments on why there is redressability for the injuries sustained if Treasury investigates the criminal activity engaged in by these 501(c)(3)'s. As is obvious, Treasury simply argues that there is no error without explaining why that is the case. Thus, Defendant's Opposition to the Motion to Reconsider cannot serve as a valid basis to deny Plaintiff's Motion to Reconsider.

Respectfully Submitted,

*/s/ Martin F. McMahon*

Martin F. McMahon, Esq.
D.C. Bar Number: 196642
Martin F. McMahon & Associates
1150 Connecticut Avenue, N.W., Suite 900
Washington, D.C. 20036
(202) 862 - 4343
mm@martinmcmahonlaw.com
*Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Plaintiff's Reply to the United State's Opposition to Plaintiff's Motion for Reconsideration has been made through the Court's electronic transmission facilities on the 18th day of April, 2017.

Respectfully Submitted,

*/s/ Martin F. McMahon*

Martin F. McMahon, Esq.
D.C. Bar Number: 196642
Martin F. McMahon & Associates
1150 Connecticut Avenue, N.W., Suite 900
Washington, D.C. 20036
(202) 862 - 4343
mm@martinmcmahonlaw.com
*Counsel for Plaintiffs*