# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

No. 17-5158　　　　　　　　　　　　　　September Term, 2017

FILED ON: JUNE 19, 2018

SUSAN ABULHAWA, ET. AL.,
　　　　　PLAINTIFFS-APPELLANTS

v.

DEPARTMENT OF THE TREASURY, ET AL.,
　　　　　DEFENDANTS-APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-2186 (RDM))

———

Before: ROGERS, MILLETT, AND PILLARD, *Circuit Judges*

## J U D G M E N T

　　This case comes before the court on appeal from the United States District Court for the District of Columbia's order granting the Department of the Treasury's motion to dismiss for lack of standing and rejecting Plaintiffs' request for leave to amend their complaint as futile. The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). It is

　　**ORDERED AND ADJUDGED** that the order of the United States District Court for the District of Columbia be affirmed.

　　Plaintiffs are a group of thirty-seven individuals concerned about or personally affected by acts of violence and expropriation against Palestinians that have allegedly occurred in conjunction with the expansion of Israeli settlements in the West Bank and East Jerusalem. Plaintiffs allege that the Treasury, through the Internal Revenue Service, improperly granted tax-exempt status to approximately 150 entities that help to fund the expansion of Israeli settlements in those contested areas and, in their view, subsidize the violence that has resulted. More specifically, Plaintiffs claim that these entities finance non-charitable activities, such as the seizure of Palestinian-owned property and acts of discrimination and physical violence against the Palestinian people. Plaintiffs acknowledge, however, that neither the Internal Revenue Service nor Plaintiffs themselves know how much money these entities provide to settlement communities.

2

Despite Plaintiffs' repeated requests, the Treasury has declined to investigate Plaintiffs' allegations or to rescind any of the challenged entities' tax-exempt status. So Plaintiffs filed suit against the Department of the Treasury and Secretary of the Treasury, Steven Mnuchin, under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. § 702. They seek a judicial order requiring the Department (i) to "initiate an investigation into any and all tax-exempt entities based in America which transmit $20,000 or more on an annual basis to any country in the world," (ii) to "revoke the entit[ies'] tax-exempt status" where "appropriate," and (iii) to "refer all tax fraud and money laundering findings to the [Internal Revenue Service] and/or U.S. Department of Justice for criminal prosecution." J.A. 148–149. As "a final request," Plaintiffs seek to compel the Treasury to subpoena and examine all records of Israel's two largest banks—Bank Leumi and Bank Hapoalim—pertaining to wire transfers made to the Israeli Defense Forces and to any Israeli settlement accounts. J.A. 149.

The district court dismissed the case on the ground that the Plaintiffs lacked Article III standing. The court also denied as futile Plaintiffs' motion to amend their complaint to add five additional plaintiffs on the same ground. The district court denied Plaintiffs' motion for reconsideration, which largely repeated or repackaged the initial standing claims.

Plaintiffs filed a notice of appeal that explicitly sought review, by date, of only the district court's order denying reconsideration. In some circumstances, we may interpret a notice of appeal to encompass an underlying order other than the one identified in the notice of appeal, if the party's intent to appeal both orders is clear. *See Isley v. Exec. Office for U.S. Attorneys*, 203 F.3d 52, 52 (D.C. Cir. 1999) (unpublished table decision) (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962)). We need not resolve the question of whether the notice of appeal could be construed to include the underlying judgment as well in this case. That is because the parties dispute only the same question of constitutional standing law in both the initial district court judgment and its denial of reconsideration. In addition, at this procedural juncture, we assume the truth of all of the Complaint's well-pleaded factual allegations, and reasonable inferences therefrom, in analyzing the standing question on review of either order. Even were we to review only the denial of reconsideration under its traditional abuse-of-discretion standard of review, that would not affect our analysis since an erroneous interpretation of standing law will necessarily be an abuse. *United States v. Atkins*, 116 F.3d 1566, 1571 (D.C. Cir. 1997) ("[A]n error of law * * * is an abuse of discretion 'by definition.'") (internal citation omitted); *see also Koch v. Cox*, 489 F.3d 384, 388 (D.C. Cir. 2007) (same). As a result, whether we review the district court's decision de novo or for abuse of discretion, the result is the same.

While we do not question the sincerity of Plaintiffs' concerns, their disagreements with the Treasury Department do not belong in federal court. Persons filing suit in courts of the United States must demonstrate Article III standing as a jurisdictional prerequisite. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To that end, they must, at this early procedural juncture, plausibly allege that (i) they have suffered an injury in fact to a legally protected right, (ii) the injury was caused by the defendants' challenged actions, and (iii) the injury is of a type that the courts can redress. *Id.* at 560–561. The injury must be both "concrete and particularized" and "actual or imminent." *Id.* at 560 (internal citation omitted). While a plaintiff need not prove her case to show standing, she must plausibly allege at least a "substantial probability" that the

challenged action will cause her concrete harm. *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002) (internal citation omitted).

The First Amended Complaint (the operative complaint) identified three specific plaintiffs and their injuries in an effort to demonstrate standing:

- Susan Abulhawa filed suit because "[t]he trajectory of [her] life has been determined and shaped by Israel's theft of [her] home and heritage." J.A. 83. Abulhawa seeks "to hold accountable those who have financed [her] pain of dispossession and exile." *Id.* 83–84.

- John Doe, a former Egyptian resident who witnessed acts of violence committed against Egyptian citizens, seeks to "defend the rights of oppressed people everywhere." J.A. 83. Doe "heard from various Palestinian friends and neighbors [about] the atrocities that are being committed in the [Occupied Palestinian Territories], and he has recently learned that this criminal activity has been largely subsidized by the American taxpayer." *Id.* 82. Though Doe does not "know who is responsible for funding settlement expansion and all the crimes detailed herein," he "would like a court to bring them to justice." *Id.* 83.

- Michael Several sued because "[h]e has visited Israel on many occasions and seen first-hand what settlement expansion has meant to the ordinary Palestinian citizen." J.A. 84. "He believes that the settlements have 'poisoned the political culture in Israel' and [] 'killed the possibility of a two-state solution.'" *Id.*

In an effort to buttress standing, Plaintiffs moved to amend their complaint a second time to add five more plaintiffs:

- Linda Kateeb and Abbas Hamideh both allege that they owned land in the West Bank area, and that this land was stolen by settlement organizations. Kateeb and Hamideh fear "that if [the] Treasury continues to allow so-called tax-exempt funds to flow" to the challenged organizations, they will lose their remaining plots. *Id.*

- Doa'a Abu Amer lost fourteen family members in a daycare center bombing in 2014. S.A. 6. Amer alleges that, "[i]f Treasury had enforced its rules and regulations," the Friends of Israel Defense Forces "would have had less capability to indiscriminately bomb a densely-populated civilian urban center." *Id.* As a result, Amer asserts that, but for the Treasury's policy, her "family members may still be alive today." *Id.*

- Ahmed Al-Zeer alleges that he was beaten by settlers in the Ofra community to the point that he is now wheelchair-bound and can no longer work as an attorney. S.A. 6. The Complaint asserts that, "[i]f Treasury had enforced its rules and regulations," U.S. tax-exempt entities "would not have been able to

4

- send funds to the Ofra settlers," who then would not have settled in the area or purchased the military weaponry they used during his attack. *Id.*

- Finally, Reverend Danny Awad alleges that he lost his Christian center "as a direct result of a straw purchase transaction whereby a settler organization and its U.S. backers * * * were able to secure ownership[.]" S.A. 6–7. Awad claims that he can no longer enter the premises for fear of physical violence. *Id.*

None of those allegations suffices to establish constitutional standing.

First, Doe's and Several's policy concerns and heartfelt desire to defend the rights of other unrelated persons are not legally cognizable injuries. Under long-settled precedent, distress and other "psychological consequence[s] presumably produced by observation of conduct with which one disagrees" are insufficient to support standing. *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 485–486 (1982); *see also Khalaf v. Regan*, No. 85-5274, 1986 LEXIS 33734 (D.C. Cir. Sept. 19, 1986) (unpublished table decision) (affirming dismissal of claims seeking to compel the IRS to revoke the tax-exempt status of six Jewish organizations because of their activities in occupied Palestinian territory as described in *Khalaf v. Regan*, No. 83-2963, 1985 WL 392 (D.D.C. Jan. 8, 1985)).

Second, the redressability requirement closes the door on Abulhawa's, Awad's, Kateeb's, and Hamideh's claims for already-lost property because damages are not available under the APA. *See* 5 U.S.C. § 702 (providing a cause of action for persons "seeking relief *other than money damages*" to redress agency wrongdoing) (emphasis added). That statutory limitation presumably is why the complaint seeks only the prospective repeal of the entities' tax-exempt status and other forward-looking governmental measures. But none of those measures could do anything to remediate property long since taken or to hold third parties accountable for the actions that allegedly have already harmed them both. Nor could prospective APA relief offer any redress for Al-Zeer's terrible physical injuries or Abu Amer's tragic loss of family members. Stripping organizations of their tax-exempt status going forward does nothing to compensate for those already-inflicted injuries. So those physical and property injuries do not establish Article III standing either.

Finally, Kateeb, Hamideh, and Awad each assert fears of future physical injuries or loss of property. Those claims for prospective relief run into different causation and redressability problems. The direct sources of those alleged prospective harms are third parties on the ground in the West Bank and East Jerusalem who are not before the court, whose actions cannot be controlled by any form of judicial relief directed to the Treasury, and who do not themselves hold any tax-exempt status conferred by the Treasury.

The Supreme Court and this court have repeatedly rejected standing in cases seeking the withdrawal of tax-exempt status for some entity in the hope that it might alter the behavior or resources of third parties not before the court. *See, e.g., Allen v. Wright*, 468 U.S. 737, 757 (1984)

5

(holding that the parents of black schoolchildren lacked standing to challenge the Treasury's failure to revoke the tax-exempt status of racially discriminatory schools because the schools would be free to continue their racist policies regardless of their tax-exempt status); *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 41–43 (1976) (holding that indigent plaintiffs lacked standing to challenge the Treasury's decision to offer favorable tax treatment to hospitals that offered only emergency services to indigent patients because the hospitals could continue to deny full care to the indigent regardless of their tax treatment); *Khalaf*, 1985 WL 392, at *1 (rejecting standing for claim seeking withdrawal of tax-exempt status for certain Jewish organizations because a court order could not plausibly affect Israeli policies in occupied Palestinian territory, and the plaintiffs' injuries were the "direct and proximate result of actions taken by independent third parties not now, and not likely ever to be, before this or any U.S. court"); *Fulani v. Brady*, 935 F.2d 1324, 1327 (D.C. Cir. 1991) (rejecting standing of political candidate to challenge the Treasury's failure to revoke the Section 501(c)(3) status of a political organization sponsoring presidential debates).

Plaintiffs argue that an investigation that results in the revocation of the tax-exempt status of the 150 identified entities will eliminate the flow of money to the settlements, and thereby materially reduce the risk of future injuries. That allegation is not plausible because it depends on a long chain of improbable assumptions, such as that (1) the Treasury would find all of the Section 501(c)(3) organizations sending funds to the specific groups that could be implicated in the potential future theft of Kateeb's or Hamideh's land or in inflicting future injuries on Awad; (2) the Treasury would choose to investigate those 501(c)(3) organizations; (3) the Treasury would revoke their tax-exempt status; (4) those entities' and their donors' willingness to send funds to Israeli settlers would evaporate in the absence of a tax benefit; and (5) no other sources of funds exist, or would appear, anywhere in the world to support the settlement activities. *See Florida Audubon Soc. v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996) (finding lack of standing where several uncertain links or improbable assumptions attenuated the link between the challenged conduct and alleged injury).

In short, as in *Khalaf*, "no sensible jurisprudence could allow this case to proceed" when all of those functionally similar cases have been dismissed for lack of standing. No. 85-5274, 1986 LEXIS 33734, at *1.

For all of those reasons, the district court properly dismissed the complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

6

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**Per Curiam**

                                        **FOR THE COURT:**
                                        Mark J. Langer, Clerk

BY:    /s/

                                        Ken Meadows
                                        Deputy Clerk